IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TONY ALLEN CRAWFORD**, | Case No. 6:16-cv-748 |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL**, Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Brent Wells, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette Street, Eugene, OR 97401 Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Sarah Moum, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Mr. Tony Allen Crawford seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") pursuant to the Social Security Act. For the following reasons, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff filed an application for SSI on March 3, 2011, alleging disability beginning on July 1, 2006. Administrative Record ("AR") 177, 178.[1] In Plaintiff's application, he alleged disabilities limiting his capacity for work, including illiteracy, a back injury, and foot pain. AR 214. The Commissioner denied Plaintiff's application initially on August 25, 2011, and on reconsideration on February 9, 2012. AR 112; AR 120. On February 24, Plaintiff requested a hearing, 2012, and Administrative Law Judge ("ALJ") Alan Beall presided over a hearing on April 3, 2013. AR 124; AR 34. The ALJ issued an unfavorable decision on May 20, 2013. AR 15. Plaintiff requested a review of the ALJ's decision by the Appeals Council, which denied Plaintiff's request on November 7, 2013. Plaintiff filed a complaint seeking review of the final decision of the Commissioner before this Court on December 31, 2013. AR 521. Plaintiff and the Commissioner subsequently stipulated that an ALJ would "update the medical record; develop and evaluate the claimant's education; obtain vocational expert ("VE") testimony; and offer the Plaintiff an opportunity for a new hearing" before issuing a decision. AR 513. Judge Marco Hernández entered a judgment and order of remand to that effect on October 28, 2014. *Id.*

Plaintiff filed another application for SSI on July 1, 2014. AR 536. That claim was approved on March 12, 2015. *Id.* On April 20, 2015, the Appeals Council informed Plaintiff that the favorable determination had been reopened, good cause existed to find that the favorable determination was made in error, and that the Appeals Council intended to combine the reopened favorable determination with the unfavorable determination remanded by Judge Hernández for further proceedings and a new decision by an ALJ. AR 554. The Appeals Council determined

---

[1] Mr. Crawford had assistance with completing the application due to his difficulties with reading and writing. *See* AR 227.

that the favorable decision was not supported by substantial evidence because it relied on the erroneous finding that Plaintiff did not have past relevant work. AR 555.

ALJ John Michaelsen presided over a hearing on Plaintiff's application on December 23, 2015. AR 416. On February 24, 2016, ALJ Michaelsen denied Plaintiff's claim. AR 394-406. Although during the hearing ALJ Michaelsen referenced the Appeals Council's decision reopening the favorable decision based on Plaintiff's July 1, 2014 application, in the ALJ's written decision, ALJ Michaelsen did not reference the July 1, 2014 application or the reopened favorable decision based that application. ALJ Michaelsen instead focused only on the March 3, 2011 application and the unfavorable decision based on that application, which had been remanded for further proceedings by Judge Hernández. The Court has jurisdiction to review ALJ Michaelsen's decision pursuant to 20 C.F.R. § 416.1484(d).

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

> 1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

PAGE 4 – OPINION AND ORDER

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

C.  The ALJ's Decision

ALJ Michaelsen applied the sequential analysis described above. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since the application date of March 3, 2011. AR 396. At step two, the ALJ found that Plaintiff had severe impairments of borderline intellectual functioning with a reading and writing disorder, depression, obesity, and mild left knee degenerative joint disease. AR 396. The ALJ acknowledged that there were other symptoms and complaints in the record, but found that they did not persist for twelve months, caused only mild symptoms, were well controlled by treatment, were not well-documented, or caused no greater than minimal limitation to Plaintiff's ability to perform work. AR 396-97. At step three, the ALJ found that Plaintiff's impairments did not meet the criteria of any listed impairment singularly or in combination. AR 397. The ALJ found that the Plaintiff has moderate restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with concentration, persistence, or pace. AR 398.

PAGE 6 – OPINION AND ORDER

The ALJ found that Plaintiff has the RFC to perform medium work limited to simple, routine, repetitive tasks requiring no more than occasional interaction with co-workers and the general public. AR 400. At step four, the ALJ found that Plaintiff was unable to perform past relevant work as a construction laborer. AR 405. At step five, the ALJ found Plaintiff capable of performing jobs that exist in significant numbers in the national economy based on Plaintiff's age, education, work experience, and RFC. AR 405. Based on VE testimony, the ALJ identified the Dictionary of Occupational Titles ("DOT")-listed roles of janitor, sorter of small wood products, and laundry worker II as possible jobs suited to Plaintiff's criteria. AR 406. As a result of the five-step analysis, the ALJ found Plaintiff "not disabled" from the filing of Plaintiff's application to the date of the hearing and rejected the application for SSI. AR 406.

## DISCUSSION

Plaintiff argues that ALJ Michaelsen erred by: (a) finding that Plaintiff had past relevant work and incorrectly categorizing Plaintiff as not disabled based on the Medical-Vocational Guidelines; (b) discounting the medical opinion of Dr. Scott Alvord, Psy.D.; and (c) discounting Plaintiff's symptom testimony without providing clear and convincing reasons supported by substantial evidence. The Court addresses each argument in turn.

**A. Plaintiff's Past Relevant Work and Classification under the Medical-Vocational Guidelines**

Plaintiff challenges ALJ Michaelsen's finding that Plaintiff is capable of performing work existing in significant numbers in the national economy on the grounds that his previous work experience consisted of a series of brief and temporary jobs that were factually misrepresented by the VE. Plaintiff asserts that, properly represented, these brief periods of employment do not constitute substantial gainful activity. Plaintiff further contends that if the

ALJ properly had found that Plaintiff had no substantial gainful activity, Plaintiff would be classified as disabled under the Medical-Vocational Guidelines.

"Past relevant work is work that [a claimaint has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960. The duration of past relevant work "should have been sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. The length of time this would take depends on the nature and complexity of the work." SSR 82-62 (1982) *available at* 1982 WL 31386, *2. "An individual who has worked only sporadically or for brief periods of time during the 15-year period, may be considered to have no relevant work experience." *Id.*

The parties dispute the length of time Plaintiff performed past work and whether that work qualifies as past relevant work. The ALJ's decision found without discussion that Plaintiff has past relevant work as a construction laborer, which the DOT classifies as very heavy exertional work activity with a Specific Vocational Preparation ("SVP") level of two. *See* DOT, 869.687-026 (4th ed. 1991) *available at* 1991 WL 687635. At the hearing, the ALJ stated that he would follow the decision of the Appeals Council to consider Plaintiff's construction work in 2005 as "past relevant work." AR 418-19. The ALJ did not permit argument by Plaintiff's attorney to the contrary.[2] The ALJ later stated that, based on the findings of the Appeals Council, he felt he had no choice but to find that Plaintiff had relevant work experience. AR 421. The Appeals Council reopened Plaintiff's favorable decision because the Appeals Council found that the VE reported Plaintiff worked for six months, from June 2005 through November 2005, and

---

[2] ALJ: "I'm going to stop you right there, and I'll answer that question. According to what the Council said, it is past relevant work, and I'm going to go ahead and find that it is past relevant work." Plaintiff's attorney then attempted to explain his position. The ALJ responded, "Counsel, I don't want to hear it. I flat out don't want to hear it. Please move on." AR 418-19.

PAGE 8 – OPINION AND ORDER

that the analysis of Plaintiff's income during that time had been incorrectly calculated in the favorable decision. AR 555-56. As a result, the Appeals Council found Plaintiff did have past relevant work. *Id.*

Plaintiff asserts that he only worked in construction for three months and not the six months found by the Appeals Council. Whether Plaintiff worked three or six months is not dispositive. Assuming without deciding that Plaintiff worked only three months, his work at the Ash Grove Cement Company could still qualify as past relevant work. Within the past fifteen years, Plaintiff has performed substantial gainful activity long enough to learn the relevant work. Plaintiff does not contest that he worked at Ash Grove in 2005 long enough to learn the task, and his tenure exceeds the SVP level's limitation to "[a]nything beyond short demonstration and up to and including 1 month" for learning how to perform the work. *See* DOT 689.687-026 (listing for construction laborer, including SVP level and definition).

Plaintiff contends that his work at Ash Grove does not count as substantial gainful activity because of its limited tenure, but the Court does not find this argument persuasive. "Ordinarily, work you have done will not show that you are able to do substantial gainful activity if, after working for a period of 6 months or less, you were forced *by your impairment* to stop working." 20 C.F.R. § 416.974 (emphasis added). Plaintiff does not allege that he was forced to stop working due to his impairment. Instead, Plaintiff testified that he was a "fill-in" or "temp" for an injured worker in a position that was only intended to last until the injured worker returned. AR 441, 457-58. Based on the evidence in the record, Plaintiff's termination was caused by the return of the injured worker Plaintiff was temporarily hired to replace, not his impairment. Although Plaintiff may not have been able to sustain his employment at other jobs due to his mental impairments and his limited reading and writing skills, the record does not

reflect that any impairment led to his termination at Ash Grove. The ALJ's conclusion that Plaintiff's construction labor qualified as past relevant work was a reasonable interpretation of the record and is entitle to deference.

The cases Plaintiff cites in support of his claim that he does not have past relevant work are distinguishable or inapposite. In *Gatliff v. Comm'r Soc. Sec. Admin.*, the VE testified that the plaintiff was "incapable of sustaining employment for a period longer than approximately two months." 172 F.3d 690, 691, 693 (9th Cir. 1999).[3] There is no such similar testimony here. In *Slack v. Astrue*, it was not the claimant's tenure at her past relevant work at issue. 2011 WL 534049 (E.D. Cal. Feb. 14, 2011). Instead, the court found that there was no substantial evidence that the plaintiff could perform her past relevant work because her allegedly disabling condition might preclude her from that type of work. *Id.* at *4. There is no analogy to the present case. Similarly, in *Hayhurst v. Astrue*, whether the plaintiff in that case had worked long enough to constitute substantial gainful activity was not at issue. 2012 WL 5064783, *8 (C.D. Cal. Oct. 18, 2012).

In sum, the ALJ's opinion, taken in light of the Appeals Council's decision and the record as a whole, is supported by substantial evidence. As a result, ALJ Michaelsen did not err in finding that Plaintiff had past relevant work and in applying the Medical-Vocational Guidelines.

## B. Discounting an Examining Medical Source Opinion

Plaintiff argues that the ALJ improperly discounted the opinion of examining psychologist Scott Alvord, Psy.D., and as a result incorrectly determined Plaintiff's mental RFC. The Commissioner responds that ALJ Michaelsen properly discounted Dr. Alvord's opinion and

---

[3] Plaintiff also quotes and cites *Senko v. Astrue*, 279 F. App'x 509, 511 (9th Cir. 2008), but that citation is to a parenthetical quoting *Gatliff*.

provided specific and legitimate reasons supported by substantial evidence for doing so. ALJ Michaelsen gave the opinion of Dr. Alvord, an examining physician, no weight. AR 404. The ALJ gave the opinion of Dr. Douglas Smyth, an examining physician, great weight, and the opinion of Dr. Katie Ugolini, an examining physician, significant weight. *Id.* The ALJ also gave significant weight to the non-examining psychological consultants Joshua J. Boyd, Psy.D., and Dr. Dorothy Anderson, Ph.D. *Id*

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502,

506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen*, 80 F.3d at 1286.

The opinions of Dr. Smyth and Dr. Ugolini both contradict the opinion of Dr. Alvord in key aspects. Neither Dr. Smyth nor Dr. Ugolini found Plaintiff suffered any limitations greater than the moderate level regarding his mental RFC. AR 689-90; AR 380. Dr. Alvord found that Plaintiff was markedly limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to work in coordination with or proximity to others without being distracted by them, and the ability to set realistic goals or make plans independently of others. AR 763-65. To reject Dr. Alvord's opinion given these contradictions, the ALJ must provide "specific, legitimate" reasons. *See Lester*, 831 F.3d at 830.

ALJ Michaelsen gave several reasons for according Dr. Alvord's opinion no weight, discussed below. The ALJ's reasoning was difficult to follow because of the lack of clarity about how or why elements of Dr. Alvord's opinion highlighted in the decision should result in that

opinion being discounted. Courts will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Commissioner has provided several explanations in briefing of why the ALJ properly rejected Dr. Alvord's opinion that do not have a plausible basis in the ALJ's written opinion. Because courts cannot affirm the Commissioner's decision on grounds the ALJ did not rely on in making his decision, those arguments are not addressed. *See Orn*, 495 F.3d at 630.

In discussing the weight given to Dr. Alvord's opinion, the ALJ first noted that Dr. Alvord attributed Plaintiff's anxiety to his childhood abuse and burns, but Dr. Alvord reported Plaintiff's mental status was fairly normal, his memory was intact, and his IQ scores were in the borderline range. AR 404. At the outset, it is important to note that Dr. Alvord's opinion does not attribute all of the limitations faced by Plaintiff to his childhood trauma or his anxiety. AR 760. Dr. Alvord diagnosed Plaintiff with persistent depressive disorder of mild to moderate severity, anxiety disorder, borderline intellectual functioning, and a learning disorder with impairment in reading, written expression, and mathematics. *Id.* Dr. Alvord does specifically link *some* of Plaintiff's depression and anxiety to his childhood trauma, AR 755, but the opinion recognizes other underlying impairments affecting Plaintiff in combination. For example, Dr. Alvord wrote that Plaintiff drew a connection between his learning disorder issues and his anxiety and depression. AR 757. The ALJ's decision on this point lacks the required specificity to reject an examining doctor's medical opinion. It is not clear from the record or the ALJ's opinion that Plaintiff's anxiety caused by childhood abuse and injury should reasonably be expected to produce abnormal mental status at the time of examination or memory problems. Without a legitimate reason or basis in the record to draw those inferences, Dr. Alvord's

diagnosis is not necessarily inconsistent with these symptoms and it is not apparent why it should be discounted. Similarly, the Court cannot discern the inference the ALJ has drawn from the relationship between Plaintiff's childhood trauma and his borderline IQ scores.

The ALJ also found that Plaintiff's stated activities of daily living were "completely inconsistent" with Dr. Alvord's findings. AR 404. Plaintiff's daily living activities include keeping his studio apartment clean, going to the store occasionally, doing laundry, cooking, and caring for his grandchildren for about four hours twice a week, without lifting them. AR 401-402. Plaintiff has also testified that he needs to "spread out" his daily living activities due to pain. AR 401.

Marked limitations preclude the ability to perform designated activities on a regular and sustained basis, while moderate limitations "seriously interfere" with the ability to perform those activities on a regular and sustained basis. *See* 20 C.F.R. § 416.920a(c)(4); AR 762. In addition to numerous moderate limitations, Dr. Alvord found that Plaintiff was markedly limited in the ability to understand, remember, and carry out detailed instructions; the ability to work in coordination with or proximity to others without being distracted by them; and the ability to set realistic goals or make plans independently of others. AR 763-65. The ALJ has not specifically explained nor can the Court reasonably infer how the limitations diagnosed by Dr. Alvord are exceeded by the modest activities of daily living described in the ALJ's decision or how they are "completely inconsistent."

In addition, the ALJ found that "there is nothing in the [Plaintiff]'s work history, treatment history, or the doctor's examination and testing results that would explain or provide a basis for the significant limitations [Dr. Alvord] imposed." AR 404. The ALJ's interpretation of the record is not supported by substantial evidence. As discussed above, Dr. Alvord's

determination of Plaintiff's limitations rely on multiple diagnoses, including borderline intellectual functioning, depression, anxiety, and a learning disorder with impairment in reading, written expression, and mathematics. In Dr. Alvord's opinion, objective medical evidence in the form of diagnostic tests provides a basis for borderline intellectual functioning and a learning disorder, including the Wechsler Abbreviated Scale of Intelligence ("WASI") and the Wide Range Achievement Test ("WRAT"). AR 754. Plaintiff received a borderline score in verbal comprehension, perceptual reasoning, and IQ on WASI as well as a third-grade-equivalent rating in reading and a fourth-grade-equivalent rating in spelling and arithmetic on the WRAT. AR 759. Furthermore, during his evaluation with Dr. Alvord, Plaintiff was unable to count by seven, spell the word *world*, or multiply five by nine. *Id.*

Testing by Dr. Smyth using the Wechsler Adult Intelligence Scale also revealed Plaintiff to have borderline or lower mental functioning, although Dr. Smyth noted Plaintiff's casual effort attempting the exam may have underestimated his intelligence. AR 693-97. Dr. Smyth's diagnosis is similar to Dr. Alvord's in many respects. AR 687. Dr. Katie Ugolini also noted borderline intellectual functioning and learning disorders. AR 368. The ALJ's assertion that there is *nothing* that provides a basis for Dr. Alvord's significant limitations is not supported by substantial evidence.

The ALJ further found Dr. Alvord's medical opinion should be discounted because Plaintiff was able to find and maintain work for significant time. AR 404. The Court reasonably infers from the ALJ's opinion that the limitations described by Dr. Alvord would preclude significant work experience and therefore evidence of past work demonstrates an inconsistency with Dr. Alvord's medical opinion. The Court addressed Plaintiff's recent work history above and concluded that the ALJ's finding that Plaintiff had past relevant work is supported by

substantial evidence. In addition, the record shows that Plaintiff earned income reported to the Social Security Administration in all but four years from 1977 to 2005.[4] AR 206-07. Furthermore, Plaintiff worked intermittently for CDI Corp. from 1991-93 and Touch of Athens, Inc., for portions of 1997-2000. AR 201-204. Plaintiff also reported to Dr. Smyth that Plaintiff worked as a bouncer at the Sunset Club from 1986-2005. AR 683.[5] At his hearing, Plaintiff also testified that he "always worked two jobs" since moving to Oregon. Plaintiff's prior work history is inconsistent with Dr. Alvord's marked and moderate limitations, and as a result the ALJ has identified a specific and legitimate reason for discounting Dr. Alvord's testimony.

## C. Plaintiff's Symptom Testimony

Plaintiff also argues that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's symptom testimony. The ALJ's decision first acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those systems are not entirely credible. AR 401. In the ALJ's opinion, the ALJ identified inconsistencies between Plaintiff's allegations and the medical record, as well as activities of daily living. AR 403. The ALJ also found Plaintiff's conservative treatment was not consistent with his alleged disability. *Id.* Finally,

---

[4] Plaintiff's recorded earnings in many years were minimal and sometimes below $100. He made more than $1,000 in fifteen of the years from the same time period. There is no recorded payment record, however, from his nineteen years of working as a bouncer at the Sunset Club, where Plaintiff states he was paid "under the table." AR 683. In the transcript, Plaintiff indicates that his recorded payments from "Touch of Athens, Inc." was for a job as a bouncer, and possibly the same job as the Sunset Club, but Plaintiff also maintains that he was paid under the table. AR 441. Plaintiff has recorded earnings from 1997-2001 from Touch of Athens. AR 611-12.

[5] Plaintiff's tenure at the Sunset Club is unclear from the record. He told Dr. Alvord that Plaintiff worked at the Sunset Club from "the late 90's early 2000's." AR 756. In 2009, he told Dr. Ugolini Plaintiff worked there from 1997 to 2001. AR 368.

the ALJ found Plaintiff's inconsistent reports of drug use and convictions of moral turpitude to have negatively affected his credibility. *Id.*

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the

reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ found that Plaintiff's activities of daily living indicated a higher level of function than alleged. AR 403. Daily activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). The ALJ found that Plaintiff's activities of daily living showed Plaintiff was able "to perform adequate self-care, prepare simple meals, do household chores and go out to the store." *Id.* The ALJ also noted Plaintiff watched his grandchildren for four hours, twice a week. *Id.* The record offers additional details: Plaintiff uses a powered cart to shop for groceries, AR 684. He does not lift his grandchildren while watching them. AR 435. He has to spread out two or three hours of housework throughout the day due to pain. AR 401. The minimal daily living activities reflected in the record are not inconsistent with the limitations alleged.

The ALJ's also relied on the fact that Plaintiff had undergone only conservative treatment for his conditions as casting doubt on Plaintiff's allegedly disabling conditions. AR 403. As an example, the ALJ noted that to treat Plaintiff's knee pain, Plaintiff pursued only RICE ("Rest, Ice, Compression, and Elevation") therapy and anti-inflammatory medication. *Id.* The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113 (quoting *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)) (quotation marks omitted). The record reflects that Plaintiff received conservative treatment for other alleged conditions. *See* AR 358, 734. Accordingly, the ALJ properly relied on Plaintiff's conservative course of treatment to discount Plaintiff's symptom testimony.

The ALJ's also discounted Plaintiff's symptom testimony because his complaints of knee pain are not supported by objective medical evidence in the record. AR 403. The lack of objective medical evidence is a relevant factor a court may consider when evaluating the ALJ's

credibility determination, but alone it is an insufficient reason to reject a claimant's subjective symptom testimony. *Id.*; *see also Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

There is little medical evidence in the record relating to Plaintiff's left knee pain. On April 13, 2015, Plaintiff reported to Dr. Vitus Nwaele that Plaintiff had experienced his left knee "giving out," pain at the knee joint, and stiffness. AR 738. He reported that the symptoms started "a few months ago." *Id.* Plaintiff's imaging showed mild degenerative joint disease. AR 402. The ALJ noted that in an October 2009 examination, Plaintiff had a normal gait, muscle strength, sensation and reflexes. AR 403 (citing AR 358). The Court does not find the 2009 examination relevant to Plaintiff's allegations of knee pain beginning in 2015. The Court agrees, however, that there is not objective medical evidence in the record of a disabling knee condition. Although not a sufficient reason by itself to discount Plaintiff's credibility, it is a factor the Court considers, along with the ALJ's reliance on Plaintiff's conservative treatment.

Having found that the ALJ properly discounted Plaintiff's symptom testimony on other grounds, and in light of the Social Security Administration's change in policy regarding general credibility findings, the Court declines to address the ALJ's reliance on Plaintiff's purported inconsistent reports of drug use or his prior criminal convictions.

## CONCLUSION

The Commissioner's opinion is supported by substantial evidence and free from harmful error. ALJ Michaelsen's opinion that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 4th day of August, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge